# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TIMOTHY CORRIGAN, and
JANET CORRIGAN,

    Plaintiffs,

v.

Case No. 09-12721
Hon. Lawrence P. Zatkoff

FIRST HORIZON HOME LOAN CORPORATION,

    Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 25, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Defendant's motion to dismiss and strike class allegations [dkt 5] and Plaintiffs' renewed motion to amend/correct the complaint [dkt 10]. The parties have fully briefed both motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion to dismiss and strike class allegations is GRANTED IN PART and DENIED in PART and Plaintiffs' motion to amend/correct the complaint is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Plaintiffs allege that in February 2007, they obtained a loan from First Horizon Home Loan

Corporation ("Defendant") to purchase a home in Pinckney, Michigan. In exchange for the loan, Plaintiffs gave Defendant a first mortgage on their home. In exchange for a second mortgage on the same home, Defendant agreed to issue Plaintiffs a home equity line of credit ("HELOC"), with a credit limit of $17,200.00. At the closing of the second mortgage on August 27, 2007, Plaintiffs signed a written contract for the HELOC, which was titled Multistate Home Equity Line of Credit and Disclosures Under the Federal Truth-in-Lending Act ("the Agreement"). The Agreement provided for a ten-year draw and a ten-year repayment plan.

Under the Agreement, Plaintiffs agreed to make the minimum payment shown on their monthly statement within 30 days of the billing cycle closing date. The minimum payment included accrued finance charges, late fees, and all past due payments. The Agreement imposed a late fee upon Plaintiffs if the minimum payment was not paid within 15 days after the minimum payment due date. The Agreement also contemplated a $50 annual fee. Regarding early termination, the Agreement stated that "[u]nless waived in writing, you must pay an Early Termination Fee of $500 if you close your account and terminate this Agreement within 3 years following the effective date." The Agreement also required Plaintiffs to acknowledge: (1) that they entered into the Agreement with the expectation that it would not be terminated within the initial 3 years; (2) that Defendant would not have been willing to enter into the Agreement for a term less than 3 years; (3) that Defendant could suffer loss and additional expenses that are difficult to ascertain if the Agreement were terminated within 3 years; and (4) that the early termination fee was intended as a good faith estimate of the expenses Defendant would incur as a result of early termination. Additionally, Plaintiffs reviewed and signed a document titled "HELOC Acknowledgment & Statement of Authorization," which stated in bold: "I/We understand there will be an early termination fee of

2

$500.00 on my/our Home Equity Line of Credit account if we terminate the Line of Credit within 3 YEARS of the effective date."

Plaintiffs never borrowed money under the HELOC. In early March 2009, Plaintiffs closed their HELOC account and terminated the Agreement.[1] On March 9, 2009, Defendant billed Plaintiff for a $500 early termination fee. The closing date for the billing cycle in which the early termination fee was incurred was March 25, 2009. Pursuant to the terms of the HELOC, Plaintiffs' minimum monthly payment should have been due 30 days later on April 24, 2009, and Defendant could have imposed a late fee for untimely payment on May 9, 2009. However, the monthly statement Plaintiffs received for the billing cycle ending on March 25, 2009, stated that the minimum payment was due on April 19, 2009—5 days early. On May 11, 2009, Defendants imposed a $25 late fee for Plaintiffs' failure to pay the early termination fee. On May 17, 2009, Plaintiffs paid the early termination and late fees under protest.

Plaintiffs have brought a class action[2] seeking to represent a class of borrowers who were subjected to Defendant's early termination and late fees in violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq* ("TILA"). Plaintiffs claim that the disclosures related to the early termination and late fees were inadequate and argue that Defendant imposed the early termination and late fees one month too early. Plaintiffs also seek recovery under theories of breach of contract and money had and received. In response, Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Before Defendant's motion to dismiss was fully briefed, Plaintiffs filed a motion to

---

[1] The exact date of the termination is unclear from the parties' papers.

[2] The class has not been certified by this Court, nor have Plaintiffs filed a motion to certify the class.

amend/correct the complaint [dkt 7]. Plaintiffs thereafter withdrew their motion to amend/correct the complaint [dkt 7], and later filed a renewed motion to amend/correct the complaint [dkt 10].

### III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 15(a)(2), a court should grant leave to amend "when justice so requires." Among the Court's considerations in deciding whether to allow an amendment are "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by the previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). "[A] motion to amend a complaint should be denied if the amendment . . . would be futile." *PT Pukuafu Indah v. United States Sec. & Exch. Comm'n*, No. 09-10943, 2009 U.S. Dist. LEXIS 92997, at *3 (E.D. Mich. Oct. 6, 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *PT Pukuafu Indah*, 2009 U.S. Dist. LEXIS 92997, at *3 (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiffs' claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiffs' favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Further, the Court need not accept as true legal conclusions or unwarranted factual inferences. The Court may

4

properly grant a motion to dismiss when no set of facts exists that would allow Plaintiffs to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(b).

## IV. ANALYSIS

In reviewing the parties' papers, the Court finds that Plaintiffs' efforts to amend the complaint have occurred without undue delay or bad faith, and that amending the complaint would not result in substantial prejudice to Defendant. Defendant has made no argument to the contrary. However, Defendant argues that amending the complaint would be futile under Fed. R. Civ. P. 12(b)(6). Therefore, the Court will examine Plaintiffs' amended complaint to determine whether Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Part IV(A) discusses Plaintiffs' claims that exist in both the original and amended complaint, for which the Court will consider Defendant's motion to dismiss and strike class allegations [dkt 5]. Part IV(B) discusses the claims Plaintiffs wish to add or correct in their amended complaint, for which the court will consider Plaintiffs' renewed motion to amend/correct [dkt 10].

**A.    DEFENDANT'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS [DKT 5]**

### 1. Disclosure Violations under the TILA

Plaintiffs allege that, through inadequate disclosure, Defendant violated the TILA by: (1)

5

failing to clearly and conspicuously inform each plaintiff and member of the class of the payment terms and the repayment options under the HELOC; (2) failing to clearly and conspicuously inform each plaintiff and member of the class that he/she could prepay or repay any outstanding balance on a HELOC in full at any time; (3) failing to provide each plaintiff and member of the class with a clear and conspicuous itemization of the fees it intended to charge and/or recoup in the event of termination of the Agreement within three years; (4) failing to clearly and conspicuously inform each plaintiff and member of the class of the totality of finance charges it intended to charge in the event of termination of the Agreement within three years; (5) engaging in misleading or deceptive disclosures, marketing or other misconduct related to its HELOC; (6) failing to inform each plaintiff and member of the class of the late fees it intended to charge with respect to the payment of the early termination fee. Defendant argues that these alleged violations of the TILA are time-barred under the TILA's one-year statute of limitations and, alternatively, that Plaintiffs' allegations fail to state claims upon which relief can be granted.

The TILA provides that borrowers who have not received required disclosures may initiate an action for civil damages, but the limitations period for such an action is one year "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). However, the "date of the occurrence of the violation" can differ depending on the type of consumer credit transaction at issue. Generally, there are two types of consumer credit transactions: open-end credit plans and closed-end credit plans. "The term 'open end credit plan' means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(I). Closed-end credit plans contemplate a single transaction, where "the

6

finance charge is divided into the term of the loan and incorporated into the time payments and thus the rate is computable by the consumer from the time he receives his first billing." *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10, 19 (7th Cir. 1976).

In a closed-end consumer credit plan, the disclosure violation occurs no later than the date of the closing of the loan—the date on which the law requires the disclosure to be made. *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980). When a TILA claim arises out of an open-end credit plan, some courts have held that the violation occurs on the date in which a "finance charge" is first imposed, rather than on the date of the closing of the loan. *See Raney v. First Nat'l Bank of Neb.*, No. 06-8-DLB, 2006 U.S. Dist Lexis 64445 (E.D. Ky. Sept. 8, 2006) (citing *Goldman*, 532 F.2d at 22).

The credit plan at issue in this case is an open-end credit plan because Defendant contemplated repeated transactions for which a finance charge would be computed on any outstanding balances. The Sixth Circuit has not addressed the issue of when the TILA's one-year statute of limitations is tolled in an open-end credit plan. In *Raney*, a district court within the Sixth Circuit followed a Seventh Circuit decision, *Goldman*, in deciding this issue. In *Goldman*, the plaintiff applied for a credit card from the defendant, but did not use the card for several months. 532 F.2d at 21. Since the plaintiff always paid his bill on time and in full, he was not assessed a finance charge until nearly a year after he received his card when his monthly payment arrived late—at which time he noticed that the finance charge was not billed as directed in his disclosure statement. *Id*. In holding that the TILA's one-year statute of limitations was not tolled until a finance charge was first imposed, the court noted that in an open end credit plan, "it is necessary that there first be a transaction for which a finance charge is imposed in order for the consumer to

7

evaluate the accuracy of the disclosure." *Id.* at 19. *See also Raney*, 2006 U.S. Dist. LEXIS at *14 (stating that in an open end credit plan, the determination of a TILA violation is only possible when the first finance charge appears, which may be many months after the customer receives and uses his credit card).

However, the *Goldman* court based its decision, in part, on "the importance of the imposition of a finance charge to the legislative scheme." *Goldman*, 532 F.2d at 21. This is reflected in the court's holding, which specifically stated that the statute of limitations is not tolled until a "finance charge" is first imposed. *Id.* at 22. In this case, Plaintiffs did not incur a finance charge. *See* Regulation Z, 12 C.F.R. § 226.4(a) (a finance charge is "the cost of consumer credit as a dollar amount . . . [and] includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the *extension* of credit") (emphasis added). Here, the early termination fee is not a finance charge because it was not a cost incurred incident to the extension of credit; it was incurred incident to the termination of credit. Similarly, the late fee at issue is not a finance charge. *See* Regulation Z, 12 C.F.R. § 226.4(c)(2) ("The following charges are not finance charges: . . . (2) Charges for actual unanticipated late payment . . . .").

Consequently, the rationale used in *Goldman* and *Raney* is not applicable here. While finance charges are imposed differently in closed-end and open-end credit plans, early termination and late fees are not imposed differently. Even in a closed-end credit plan, a borrower cannot learn whether the disclosure related to early termination and late fees is adequate until the fees are imposed, yet the Court is aware of no authority providing for a different application of the statute of limitations in such circumstances. Given that the holding in *Goldman* was limited to cases in

which a finance charge has been imposed, the Court finds that its rationale for providing a different application of the statute of limitations in open-end credit plans is inapposite here.

Plaintiffs closed on the HELOC on August 27, 2007, and filed suit on July 9, 2009—more than one year after the alleged inadequate disclosure occurred. Therefore, the Court finds that Plaintiffs' claims arising out of Defendant's alleged inadequate disclosure regarding the early termination and late fees are time barred under the TILA's one-year statute of limitations. Accordingly, Defendant's motion to dismiss the above mentioned claims pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

**2. Money Had and Received**

Plaintiffs have also brought a cause of action for money had and received, seeking a return of money that they allege Defendant was not entitled to receive. Under the terms of the Agreement, Plaintiffs' cause of action for money had and received is governed by Tennessee law, which treats this action as one for unjust enrichment. *See Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) ("Both unjust enrichment and money had and received are essentially the same cause of action, being both quasi-contractual actions."). However, neither quasi-contractual claim is sustainable where the money being sought was paid pursuant to a valid contract. *See Daugherty v. Sony Elecs., Inc.*, No. E2004-02627-COA-R3-CV, 2006 Tenn. App. LEXIS 53, at *19 (Tenn. Ct. App. Jan. 26, 2006) ("[O]ne of the underlying requirements for stating an unjust enrichment claim is that there be no valid and enforceable contract between the parties.").

Plaintiffs agree that their claim is not sustainable if there is a valid contract, but contend that the early termination fee renders the provision invalid as an unlawful liquidated damages clause. *See Whitehaven Comm. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("Courts

9

will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation.") (citing *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154-55 (Tenn. 1966)); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 97,100 (Tenn. 1999) ("[I]f the provision and circumstances indicate that the parties intended merely to penalize for a breach of contract, then the provision is unenforceable as against public policy."). The determining factor in deciding whether a liquidated damages clause is enforceable is whether the fee reflects a reasonable estimation of actual damages or whether the fee is intended merely to penalize. *Guiliano*, 995 S.W.2d at 97.

Under the circumstances of this case, the Court finds that Plaintiffs have failed to allege that the early termination fee was intended "merely to penalize." When Plaintiffs entered into the Agreement, they acknowledged: (1) that they entered into the Agreement with the expectation that it would not be terminated within the initial 3 years; (2) that Defendant would not have been willing to enter into the Agreement for a term less than 3 years; (3) that Defendant could suffer loss and additional expenses that are difficult to ascertain if the Agreement were terminated within 3 years; and (4) that the early termination fee was intended as a good faith estimate of the expenses Defendant would incur as a result of early termination. The parties used $500 as a proxy for Plaintiffs' decision to prematurely terminate a $17,200.00 line of credit, and Plaintiffs plead no facts suggesting that the $500 fee is so outrageous that its enforcement would violate public policy. The fact that the early termination fee may have exceeded the actual expenses incurred by Defendant as a result of Plaintiffs' termination is insignificant. *See Guilano*, 995 S.W.2d at 99 ("[T]he amount of actual damages at the time of breach is of little or no significance . . . ."). Therefore, the Court

finds that, given the above circumstances, Plaintiffs' have failed to adequately allege that the early termination fee provision is unenforceable as against public policy. Accordingly, Defendant's motion to dismiss Plaintiff's claim for money had and received under Fed. R. Civ. P. 12(b)(6) is GRANTED.

### 3. Class Claim for Rescission

Plaintiffs, on behalf of a class of allegedly similarly situated individuals, assert a claim for rescission under the TILA based on Defendant's alleged failure to make material disclosures. Although the Sixth Circuit has not yet decided the question of whether a class seeking rescission under the TILA is certifiable, three Circuit Courts of Appeals have held that, as a matter of law, rescission claims cannot be pursued in a class action. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573-75 (7th Cir. 2008) (explaining, in the context of claims brought under the TILA, that class actions are inappropriate for rescission claims because such claims are "highly individualized" and "[t]he variations in the transactional 'unwinding' process that may arise from one rescission to the next make it an extremely poor fit for the class-action mechanism"); *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 423 (1st Cir. 2007) (concluding that "Congress did not intend rescission suits to receive class-action treatment"); *James v. Home Constr. Co. of Mobile, Inc.*, 621 F.2d 727 (5th Cir. 1980). *See also Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 962 (N.D. Ohio 2009) (holding in an action not brought under the TILA that rescission "is a 'purely personal remedy' and thus is incompatible with class action suits").

Plaintiffs have not cited a single case in which a court has allowed a class claim for rescission under the TILA, arguing merely that the First, Fifth, and Seventh Circuits have wrongly decided the issue. The Court finds that Plaintiffs have failed to present a plausible reason as to why

11

this Court should rule differently than the First, Fifth, and Seventh Circuits have on this issue. Accordingly, Defendant's motion to dismiss Plaintiffs' class claim for rescission under the TILA pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

**B. PLAINTIFFS' RENEWED MOTION TO AMEND/CORRECT [DKT 10]**

Plaintiffs have filed a renewed motion to amend/correct the complaint [dkt 10], seeking to allege three additional violations of the TILA by Defendant: (1) Defendant violated 15 U.S.C. § 1637(b)(9) by failing to provide periodic statements accurately stating the payment due date and or late fee assessment date related to their HELOC; (2) Defendant violated 15 U.S.C. § 1637(b)(12) by unilaterally changing the grace period, payment due date and/or late fee assessment date provided for in the Agreement; and (3) Defendant violated 15 U.S.C. § 1647(c) by imposing a late fee without providing notice of the date on which it would be imposed. Plaintiffs also allege that Defendant breached its obligations under the Agreement by unilaterally changing the contract provisions. Lastly, Plaintiffs wish to amend their claims for injunctive and declaratory relief. The Court will address Plaintiffs' amended claims in turn.

**1. 15 U.S.C. § 1637(b)(9)**

15 U.S.C. § 1637(b)(9) requires that the periodic statement sent to the borrower at the end of each billing cycle include "[t]he date by which or the period (if any) within which, payment must be made to avoid additional finance charges . . . ." Plaintiffs claim that Defendant violated 15 U.S.C. § 1637(b)(9) by failing to provide periodic statements accurately stating the payment due date and or late fee assessment date related to their HELOC. Plaintiffs argue that the HELOC provided for a 30-day grace period in which Plaintiffs could pay their balance before incurring finance charges, while two periodic statements sent to Plaintiffs showed a 25-day grace period.

12

Plaintiffs received monthly statements from Defendant in April and May of 2009, both of which stated that the minimum payment was due within 25 days after the end of the cycle closing date. The statements also stated that "[t]o avoid any additional Finance Charges on Purchases pay entire New Balance by Payment Due Date." Accepting Plaintiffs' factual allegations as true, Plaintiffs have alleged facts suggesting that Defendant violated 15 U.S.C. § 1637(b)(9) by failing to accurately provide the date by which payment was due to avoid additional finance charges. Therefore, the Court finds that amending the complaint to add a claim under 15 U.S.C. § 1637(b)(9) would not be futile. Accordingly, the Court GRANTS Plaintiffs' motion to amend the complaint with respect to their claim under 15 U.S.C. § 1637(b)(9).

**2. 15 U.S.C. § 1637(b)(12)**

In Plaintiffs' reply to Defendant's response, Plaintiffs withdraw their request for leave to amend to add a claim under 15 U.S.C. § 1637(b)(12). Accordingly, the Court DENIES Plaintiffs' motion to amend the complaint with respect to their claim under 15 U.S.C. § 1637(b)(12).

**3. 15 U.S.C. § 1647(c)**

15 U.S.C. § 1647(c)(1) provides that "[n]o open end consumer credit plan . . . may contain a provision which permits a creditor to change unilaterally any term required to be disclosed under [15 U.S.C. § 1637a(a)] or any other term, except a change in insignificant terms." Plaintiffs claim that Defendant unilaterally changed the minimum payment and late fee due dates by listing the wrong dates on two monthly statements. Defendant contends that even though two monthly statements provided the wrong dates, the contract terms were not changed because the late fee was enforced pursuant to the terms of the Agreement. Defendant does not address Plaintiffs' allegations that Defendant also changed the minimum monthly payment due date.

Based on the facts alleged by Plaintiffs, the Court finds that Plaintiffs have pleaded facts sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiffs have presented evidence showing that Defendant changed the minimum monthly payment and late fee due dates, as reflected in the monthly statements for April and May of 2009. Defendants have presented evidence that the terms were not changed because the late fee was, nonetheless, imposed according to the terms of the Agreement. The early termination fee was billed on March 9, 2009, and the billing cycle closing date was March 25, 2009. Under the terms of the Agreement, Plaintiffs' minimum monthly payment should have been due 30 days later on April 24, 2009, and Defendant could have imposed a late fee for nonpayment 15 days later on May 9, 2009. Defendants imposed the late fee on May 11, 2009.

However, the Court must resolve all ambiguities in Plaintiffs' favor. Thus, the Court finds that it would not be futile to amend the complaint to add a claim under 15 U.S.C. § 1647(c). Accordingly, Plaintiffs' motion to amend the complaint with respect to their claim under 15 U.S.C. § 1647(c) is GRANTED.

### 4. Breach of Contract

Plaintiffs also argue that by inaccurately stating the minimum monthly payment and late fee due dates in the April and May 2009 monthly statements, Defendant breached a provision under the Agreement, which stated that no change would be made to the Agreement except insignificant terms and those to which Plaintiffs agreed in writing. Plaintiffs contend that as a result of Defendant's breach, Plaintiffs suffered damages when Defendant imposed the $25 late fee.

Defendants argue that the late fee was properly imposed under the terms of the Agreement, that no breach occurred, and that Plaintiffs suffered no damages therefrom. *See supra*, Part

IV(B)(3). However, Plaintiffs reply that Defendants imposed the early termination and late fees one month too early. The Agreement stated that the minimum monthly payment consisted of accrued finance charges, late fees, and all past due payments. Plaintiffs contend that the early termination fee, which was incurred on March 9, 2009, could not have been a past due payment on the April 2009 monthly statement. According to Plaintiffs, the early termination fee would not have been a "past due" payment until the end of the following billing cycle ending on April 27, 2009, in which case it would not have been due until at least May 22, 2009.[3] Since Plaintiffs paid the early termination fee on March 17, 2009, they argue that their payment was timely and that no late fee should have been imposed. Thus, as Plaintiffs suggest, Defendants breached the Agreement by imposing the early termination fee one month before it was due, and Plaintiffs were damaged by having to pay an unwarranted late fee.

Based on the facts alleged by Plaintiffs, the Court finds that amending the complaint to add a claim for breach of contract would not be futile. According to the evidence presented, it is unclear whether the early termination fee constitutes a past due payment or is otherwise due on the monthly statement following the billing cycle in which it is incurred. However, the Court must resolve all ambiguities in Plaintiffs' favor and accept Plaintiffs' allegations as true. Therefore, the Court finds that Plaintiffs have pleaded facts sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Accordingly, Plaintiffs' motion to amend the complaint to add a claim for breach of contract is GRANTED.

### 5. Declaratory Relief

---

[3] The May 2009, billing cycle showed May 22, 2009, as the minimum monthly payment due date, which was 25 days after the stated cycle closing date of April 27, 2009.

Defendant objected to Plaintiffs' claim for declaratory relief in Plaintiffs' original complaint because it was listed as merely a form of relief without an underlying cause of action. Further, Defendant argued that since all Counts failed to state claims upon which relief could be granted, the relief requested must also fail. However, Defendant has not objected to the declaratory relief Plaintiffs request in their amended complaint. Furthermore, Plaintiffs have alleged several viable causes of action. Therefore, the Court GRANTS Plaintiffs' motion to amend their complaint to seek declaratory relief.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS ORDERED that Defendant's motion to dismiss ans strike class allegations [dkt 5] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' renewed motion to amend/correct the complaint [dkt 10] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: February 25, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 25, 2010.

                                                                   S/Marie E. Verlinde
                                                                   Case Manager
                                                                   (810) 984-3290